# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| WILLIAM B LAWSON | CASE NO. 2:19-CV-00834 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| EXCEL CONTRACTORS L L C | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is "Excel Contractors, LLC's Motion for Summary Judgment" (Doc. 23) wherein Defendant moves to dismiss Plaintiff, William B. Lawson's complaint pursuant to Federal Rule of Civil Procedure 56. Plaintiff, William B. Lawson asserts four causes of action against Excel: (1) age discrimination, (2) retaliation under the Family Medical Leave Act ("FMLA"); (3) FMLA interference; and (4) and unspecified action under the Americans with Disabilities Act.

## FACTUAL STATEMENT

Mr. Lawson, who was born on January 2, 1954, has made claims against his former employer, Excel Contractors, LLC ("Excel") under the anti-discrimination and/or anti-retaliation provisions of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), and the Family and Medical Leave Act of 1993 ("FMLA"). Mr. Lawson complains that Excel unlawfully interfered with his right to take protected medical leave, and that Excel terminated him because of his age, along with the accompanying medical conditions and the necessary medical leave he had to take.

Mr. Lawson is a Certified Welding Inspector ("CWI"). He began his most recent employment with Ron Williams Construction as a CWI/Field Inspector in May 2014.[1] Excel purchased Ron Williams Construction in April 2016 resulting in Mr. Lawson being employed by Excel as a Quality Assurance/Quality Control ("QA/QC") Inspector in April 2016.[2] Mr. Lawson was 62 years old when Excel hired him in April 2016 and 64 years old when he was terminated.

On or about August 21, 2017, Mr. Lawson began experiencing chest pains and dizziness while on the job site. Due to his condition, Mr. Lawson left work to go home and to the doctor. Mr. Lawson received two (2) return-to-work slips, the first from his physician on September 5, 2017, and the second from Excel's company physician on September 9, 2017. Both slips allowed Mr. Dawson to return to work without restrictions. On or about September 9, 2017, Mr. Lawson returned to work, specifically on the Firestone project and the Westlake Petrochem project which he left on August 21, 2017. Mr. Lawson completed the Firestone project which included close-out packages necessary for Excel to invoice to the project owner, a necessary obligation of his job position. Shortly after his return, the Westlake Petrochem project was shut down due to engineering issues.

Two (2) days after Mr. Lawson took medical leave for his illness (August 23, 2017), Excel hired Davis Currie (DOB 1971, or 47 years old) as a QA/QC Inspector. Gene Anderson, was also a QA/QC Inspector for Excel as a consequence of Excel's acquisition of Ron Williams Construction, LLC.[3] Mr. Currie resigned on March 7, 2018 and Mr.

---

[1] Plaintiff's exhibit A, p. 17-18, 32-33.
[2] Id. p. 20-21; Plaintiff's exhibit E; Plaintiff's exhibit M.
[3] Mr. Anderson was promoted to fill Albert Hungerford's position who resigned in June 2017.

Anderson resigned on February 28, 2018.[4] In January 2018, Excel submitted Mr. Lawson's resume in connection with the bid of the Juniper construction project, but Excel was not awarded the project.[5] Due to a Reduction of Force ("ROF"), Mr. Lawson along with a vast number of other employees, were laid off on January 25, 2018.[6]

Excel maintains that Mr. Lawson's lay off was a legitimate company-wide ROF and for a non-discriminatory reason, whereas, Mr. Lawson maintains that Excel's lay off was due to his age, and/or retaliation for taking medical leave five (5) months prior.

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the

---

[4] Plaintiff's exhibits G and I.
[5] Defendant's exhibit 2, Carpenter Affidavit, ¶¶ 13-14.
[6] Defendant's exhibit 1, Affidavit of Katie Burk, ¶ 14; Defendant's exhibit 2, Affidavit of Barry Carpenter, ¶ 16; Defendant's exhibit 3, p. 47:14-15.

nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

The ADEA, FMLA, and ADA make it unlawful to discharge or otherwise discriminate against an individual with respect to age, disability, or need to take medical leave for a qualifying health condition. 29 U.S.C. § 623(a)(a); 42 U.S.C. § 12112(a); 29 U.S.C. § 2615(a)(1)-(2). The FMLA requires a covered employer to allow an eligible employee up to 12 weeks of unpaid leave for a qualifying health condition and to restore the employee to the same position or equivalent position with the equivalent employment benefits, pay, and other terms and conditions upon his or her return to the workplace. 29 U.S.C. § 2614(a).

*ADEA*

Under the ADEA, an employer cannot "discharge any individual… because of such individual's age." 29 U.S.C. § 623(A)(1). To establish an ADEA claim, the plaintiff must show that his age was the "but for" cause of his termination—proving that age was a "motivating factor" for the decision is not enough. *Gross v. FBL Fin. Servs., Inc.* 557 U.S. 167, 180, 129 S.Ct. 2343 (2009) (holding that a "plaintiff must prove by a preponderance of the evidence … that age was the 'but-for' cause of the challenged employer decision"); see also *Moss v. BMC Software, Inc.,* 610 F.3d 917, 928 (5th Cir. 2010) ("[T]he Supreme court rejected the application of Title VII's 'motivating factor' standard to ADEA cases." (citing *Gross,* 557 U.S. at 173-178, 129 S.Ct. 2343)). A plaintiff may prove that age was a but-for cause of his firing with direct or indirect evidence. *Kilgore v. Brookeland Indep. Sch. Dist.,* 538 F.App'x 473, 475-76 (5th Cir. 2013) (per curiam) (unpublished).

If the plaintiff cannot prove his case with direct evidence of discriminatory motive, he can still rely on indirect evidence. When confronting indirect evidence, courts use the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, (1973). Under this framework, a plaintiff must first "put forth a prima facie case." *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 349 (5th Cir. 2007). After making out a *prima facie* case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Id.* If the employer articulates such a reason, the plaintiff must rebut the employer's purported explanation by showing that the reasons given is merely pretextual. *Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 378-79 (5th Cir. 2010).

To show pretext, a plaintiff must present enough evidence for a reasonable jury to believe that [the employer's] "reasons are pretext for unlawful discrimination." *Bienkowski v. Am. Airlines, Inc.,* 851 F.2d 1503, 1504 (5th Cir. 1988). A plaintiff can do so by showing that; (1) "a discriminatory reason more likely motivated" the employer, Id.; (2) the employer's "reasons is unworthy of credence," *Id.*; or (3) he "is 'clearly better qualified' than the person selected for the position," *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,* 482 F.3d 408, 412 (5th Cir. 2007).

Under the *McDonnell Douglas* framework, Plaintiff's *prima facie* case with respect to the ADEA requires him to show discrimination because of his age, whereas under the ADA, he must show discrimination based on a disability. Mr. Lawson must show that: (1) he was subject to an adverse employment action; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 378 (5th Cir. 2010).

Mr. Lawson complains that Excel failed to promote him in favor of Gene Anderson and terminated him in favor of David Currie and Gene Anderson. Excel posits that based on his deposition testimony, Mr. Lawson cannot prove that a discriminatory reason more likely motivated Excel, or that Excel's reason is unworthy of credence. Excel also contends that Mr. Lawson is not "clearly better qualified" than Mr. Currie or Mr. Anderson.

An employer's failure to promote is a discrete act that is actionable under the ADEA and ADA. 29 U.S.C. § 621 *et seq.;* 42 U.S.C. § 12112(a). To prove a failure to promote

claim, Mr. Lawson must establish that (1) he was a member of a protected class; (2) he sought and was qualified for a position; (3) he was not promoted to the position sought; and (4) (a) the position was filled by someone younger (or non-disabled) or (b) the failure to promote was because of his age (disability). *Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 575-76 (5th Cir. 2003).

Mr. Lawson complains that Mr. Anderson was promoted effective September 1, 2017, as the lead QA/QC for the Lake Charles area when Mr. Hungerford Resigned.[7] Excel asserts that Mr. Lawson's inability to complete the Firestone closeout packages adversely impacted Excel and reflected unfavorably on Mr. Lawson. Excel argues that it chose to put the additional responsibilities on Mr. Anderson, considering Mr. Lawson's inability to manage his existing responsibilities. Excel supports this argument with a string of emails to Lawson regarding concerns that the Firestone project package had not been completed, and that Firestone was withholding payment on account of the delinquent packages.[8]

Mr. Lawson asserts that he was more qualified than Mr. Anderson for the QA/QC position because he had been Mr. Anderson's supervisor when he worked for Ron Williams Construction. Excel remarks that Mr. Lawson was hired in 2013 by Ron Williams Construction as a QA/QC manager, was laid off about six (6) months later, and rehired by Ron Williams Construction in 2014, at which time he was not employed as a QA/QC manager.[9] Also, Mr. Anderson had worked with Ron Williams Construction approximately five (5) years longer than Mr. Lawson. Mr. Anderson was hired in 2008 whereas Mr.

---

[7] Plaintiff's exhibit H; Plaintiff's exhibit C, p. 43; Plaintiff's exhibit D, pp. 24-25.
[8] Defendant's exhibit 3, attached to exhibit 16; Defendant's exhibit 6, p. 11:19-113:7.
[9] Defendant's exhibit 3, p. 17-18.

Lawson was hired in 2013. Thus, Excel argues that Mr. Lawson's brief supervision of Anderson is insufficient evidence of discrimination.

The Court agrees with Excel and finds that under *McDonnell Douglas,* Excel has shown "legitimate, nondiscriminatory reasons for promoting Mr. Anderson over Mr. Lawson. Therefore, Mr. Lawson has the burden to show that Excel's reasons are pretextual.

"The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision *Bienkowski,* 851 F.2d at 1505, and the "plaintiff must produce substantial evidence of pretext." *Price v. Federal Express Corp.,* 283 F.3d 715, 719-20 (5th Cir. 2002).

Excel asserts that Mr. Lawson has not provided any evidence of Mr. Anderson's qualifications;[10] Mr. Lawson did not depose Mr. Anderson, Excel, or Mr. Carpenter who made the decision to promote Mr. Anderson.

Mr. Lawson relied solely on the fact that Mr. Anderson was promoted approximately one (1) week after Plaintiff experienced chest pains and dizziness. The Court finds that Mr. Lawson has failed to submit any summary judgment evidence to create a genuine is of fact for trial as to his claim for failure to promote under the ADEA.

Due to a ROF, Mr. Lawson was discharged on January 25, 2018. Mr. Lawson claims he suffered an adverse employment action by virtue of his termination. Mr. Lawson argues it is irrelevant that Anderson and Currie were within the protected age class themselves. Mr. Lawson cites *Thornbrough v. Columbus & G.R. Co.,* 760 F.2d 633, 644 (5th Cir. 1985)

---

[10] Response to Request for Production No. 7., Defendant's exhibit 5.

wherein the Fifth Circuit stated that "what is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones. . .;" Mr. Lawson contends that it is indisputable that Excel terminated Mr. Lawson and retained substantially younger employees, Gene Anderson (DOB September 30, 1974) and David Currie (DOB February 3, 1971).

In order to avoid summary judgment, Mr. Lawson must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013), citing *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

Excel's non-discriminatory reasons for Mr. Lawson's termination were (1) a reduction in force due to an uncontested lack of available work; (2) Mr. Lawson's untimely completion of the essential Firestone closeout packages; and (3) Excel's inability to secure the Juniper construction project.

Mr. Lawson contends that in March 2018, Excel needed an additional QA/QC inspector, but chose to hire Fabian Didier (DOB 7/2/69) to replace the ones recently lost (Mr. Anderson resigned on February 27, 2018 and Mr. Currie resigned on March 7, 2018).[11] However, Excel notes that Mr. Lawson did not apply for this advertised position.[12]

There is no dispute that Mr. Lawson was laid off due to an ROF. Excel relies on Mr. Lawson's allegations that Mr. Anderson worked exclusively on overhead from December

---

[11] Plaintiff's exhibit I.
[12] Defendant's exhibit 1, Affidavit of Katie Burk, ¶ ¶ 24 and 25.

18, 2017 to February 19, 2081 and Mr. Curried billed time on the Indorama project until January 11, 2018 and worked entirely on overhead until February 19, 2018.[13] Excel suggest that this proves that there was no work available because neither Mr. Currie nor Mr. Anderson were billing hours for projects in December and January. If work had been available, one or more of these employees would have billed out to a project that would allow Excel to invoice an owner for work. Therefore, there was no billing to a project around January 25, 2021, i.e. no billable work being performed by any of the QA/QC personnel. Excel also notes that Mr. Lawson admits that after he was laid off, there was "virtually no work" "in this area down here…"[14]

Mr. Lawson testified that his position with Excel was a "roving, full-time job, which would require him to float from one project to the next.[15] Even though Excel laid off numerous employees from various projects, Mr. Lawson suggests that he was the only QA/QC employee that was laid off pursuant to the ROF.[16] Mr. Lawson notes that in year 2017 and January 2018, he billed for 15 different projects and that of these 15 projects, Excel conducted layoffs with respect to only two (2) of the projects, noting that Excel has failed to submit evidence that there were any lay-offs as to the other 13 projects. Mr. Lawson contends that Excel was awarded seventy-two bids between October 2, 2017 and April 30, 2018, 35 of which were accepted before January 25, 2018, the date of Mr. Lawson's lay-off.[17]

---

[13] Doc. 25-2, p. 57.
[14] Defendant's exhibit 3A, Lawson Depo. p. 60, Doc. 23-22; Doc. 23-24 p.1 and 60.
[15] Plaintiff's exhibit A, p. 84, 206-207.
[16] Plaintiff's Exhibit E and L, *in globo*.
[17] Plaintiff's exhibit X.

Mr. Lawson asserts that there is no evidence from Excel suggesting why he could not be assigned to any of the numerous projects awarded to Excel prior to January 25, 2018, or to any projects that Excel was awarded shortly thereafter. Mr. Lawson also notes that two individuals with comparable QA/QC positions (Mr. Anderson and Mr. Currie) resigned shortly after Mr. Lawson was laid off and Excel hired Mr. Didier to replace them.

Mr. Lawson testified that throughout the Fall of 2017, Excel "did not have much work going other than the industrial side, which [he] was on."[18] Mr. Lawson testified about ongoing work at Alcoa which he had worked on, but not as a full-time inspector.[19] Mr. Lawson contends that there was still work to be done because the Alcoa Superintendent called him in May 2018 requesting that he do the final inspection and work on the packages.[20] Mr. Lawson maintains that there is a genuine issue of material fact as to whether work remained for him despite the fact that Excel lost several big construction projects as of January 2018.

Mr. Lawson asserts that Excel has proffered no evidence that the ROF resulted from any actual project completions, or that the projects to which he had been assigned or could have been assigned had actually come to an end. Mr. Lawson argues that this is relevant because he was the only QA/QC employee terminated.[21] Excel submits that Mr. Lawson was not the only QA/QC employee that was terminated. Mr. Lawson posits that it is

---

[18] Plaintiff's exhibit A, p. 58.
[19] Id. p. 60.
[20] Id. p. 61-62.
[21] Plaintiff's exhibit L.

Defendant's burden to show that absolutely no work was available to retain him as a "floating" employee.

Excel remarks that Mr. Lawson did not depose a Rule 30(b)(6) representative of the company and that its speculation that there may have been work available for Mr. Lawson in the Lake Charles area is insufficient to create a genuine issue of material fact for trial. Excel points to Plaintiff's exhibit X which indicates that Excel was awarded a contract by Reagent Chemical located in St. Gabriel, Louisiana, even though Mr. Lawson testified that it was cost prohibitive to travel due to per diem pay being taken away.[22] Excel also submits the deposition testimony of Mr. Gros who testified that "not every job requires an inspector. So just because there was work going on doesn't mean it required inspection."[23]

Excels relies on the deposition Affidavit of Barry Carpenter, the Director of Quality Assurance and Quality Control, who declared the following: (1) Mr. Lawson, Mr. Currie and Mr. Anderson were all qualified QA/QC personnel; (2) Mr. Lawson's inability to timely complete the Firestone closeout packages reflected unfavorably on him; (3) Excel proposed Mr. Lawson's resume in connection with two separate projects (one of those was the Juniper construction project) which was ultimately not awarded to Excel; (4) if Excel had been awarded the Juniper construction project, Mr. Lawson would have been promoted; (5) Mr. Anderson had seniority within the organization; (6) Excel lost its construction projects; (7) Mr. Lawson had zero billable work in January 2018, and only 29

---

[22] Defendant's exhibit 3B, Lawson deposition, p. 29, Doc. 23-23.
[23] Defendant's exhibit 6. Gregory Lee Gros, II deposition, p. 16, Doc. 23-29.

billable hours in December 2017;[24] (8) Mr. Lawson was eligible for rehire; (9) Mr. Currie was retained longer than Mr. Lawson because Mr. Currie's name had been submitted in connection with a small planning project at Juniper ("Juniper planning project") to which Excel was awaiting a response.[25]

Excel provides summary judgment evidence that Mr. Lawson was not the only QA/QC employee that was laid off due to the ROF; Mr. Keenan Juneau was also laid off on January 5, 2018 due to the ROF.[26]

Mr. Carpenter further declared that Mr. Lawson and Mr. Currie were equally qualified in terms of having at least five years of experience as a Certified Welding Inspector.[27] When Excel submitted Mr. Currie's resume for the Juniper planning project, Mr. Lawson was still working on the Firestone closeout packages which were months behind resulting in non-payment to Excel. In the event Excel successfully received the Juniper planning project, Mr. Currie would be called out to Juniper before Mr. Lawson completed the closeout packages. The Juniper construction project, if successfully awarded, would not start until later.[28]

The decision to lay off Mr. Lawson was made after Excel found out it was not awarded the Juniper construction project and after Mr. Lawson completed the Firestone

---

[24] Mr. Carpenter testified as to Mr. Lawson's billable hours as follows:
    October 2017     71 billable hours
    November 2017  38 billable hours
    December 2017  29 billable hours
    January 2018     0 billable hours
[25] Affidavit of Barry Carpenter, Doc. 23-16.
[26] Plaintiff's exhibit A, Lawson deposition, p. 21, Doc. 25-4.
[27] Id. ¶ 19.
[28] Id. ¶ 21.

packages.²⁹ Mr. Lee Gross, the head of the Lake Charles operations, informed the QA/QC department head, Mr. Carpenter, that they needed to size-down the QA/QC personnel due to lack of billable work. Before Excel found out that it was awarded the Juniper planning project, Mr. Currie resigned and shortly thereafter Mr. Anderson resigned.³⁰ Consequently, Excel published an advertisement in March 2021 for the position.³¹ Excel hired Fabien Didier, who was older than Mr. Currie or Mr. Anderson, effective August 23, 2017.

Excel maintains that had it been awarded the Juniper construction project, Mr. Lawson would not have been laid off, and instead would have received a promotion as the QA/QC Manager. Excel buttresses this by the fact that it submitted Mr. Lawson's name and credentials as the QA/QC Manager in its bid to Juniper, as well as the fact that when Excel laid Mr. Lawson off, he was designated as eligible for rehire.

"The ADEA was not intended to be a vehicle for judicial second-guessing of business decisions, nor was it intended to transform the courts into personnel managers." *Gifford v. Lone Star Steel Co.,* 170 F.3d 183 (5th Cir. 1999) (internal citations omitted). The Court finds that Excel has not only shown that it had legitimate non-discriminatory reasons for Mr. Lawson's lay-off, but also Mr. Lawson has failed to show that Excel's reasons for terminating his employment due to the ROF was pretextual.

*ADA*

Under the ADA, Plaintiff must show that (1) he is disabled under the ADA; (2) he is qualified to perform the essential functions of his job; and (3) he was discharged or

---

²⁹ Id. ¶ 22.
³⁰ Id. ¶¶ 23, 24.
³¹ ¶ 25.

otherwise adversely affected in whole or in part because of his disability or perceived disability. *Grant v. Oceans Healthcare, LLC,* 2019 U.S. Dist. LEXIS 211504 (M.D. La. Dec. 9, 2019) (citing *McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 279 (5th Cir. 2000)).

Mr. Lawson argues that he suffered an actual disability. An actual disability is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1). An impairment is a disability within the meaning of the statute if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. *Willis v. Noble Envtl. Power, LLC,* 143 F.Supp.3d 475, 481 (N.D. Tex. Oct. 22, 2015) (quoting C.F.R. § 1630.2(j)(1)(ii)).

Mr. Lawson argues that he is disabled because he suffers from a 20-30% blockage in the arteries of his heart[32] which requires him to take blood pressure medicine. Mr. Lawson also contends that Excel perceived him as having a disability because he experienced dizziness on-site which resulted in him having to take medical leave.

Excel argues that Mr. Lawson's medical condition did not limit him from performing his work. Excel remarks that upon his return to work, Mr. Lawson was assigned "office work" for two weeks to close out packages for the Firestone project Mr. Lawson had worked prior to taking medical leave.[33] Excel notes that the close out packages were Mr. Lawson's sole responsibility and a priority because Firestone was withholding payment on account of the delinquent packages.[34] This "office work" was essential

---

[32] Plaintiff's exhibit A, p. 35-36, ,166, 173-174, 176-177.
[33] Complaint, Doc. 1, ¶ 24.
[34] Defendant's exhibit 6, p. 11:19-13:7.

paperwork associated with Mr. Lawson's inspections which was necessary for Excel to invoice the owner for the construction and maintenance work.

Furthermore, Mr. Lawson received two (2) return-to-work slips, the first from his physician on September 5, 2017, and the second from Excel's company physician on September 9, 2017. Both slips allowed Mr. Dawson to return to work without restrictions.

The Court finds that there is no evidence that Mr. Lawson was disabled, nor is there evidence that Excel perceived Mr. Lawson as disabled. The evidence clearly and undisputedly shows that after he returned to work from his medical leave, Mr. Lawson was released to return to work with no restrictions.

*Retaliation*

The FMLA prohibits employers from retaliating against employees who exercise or attempt to exercise their rights to leave. The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the statute]." 29 U.S.C. § 2615; see also *Lee v. Kansa City s. By. Co.,* 574 F.3d 253, 258 (5th Cir. 2009).

To establish a *prima facie* case, the plaintiff must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment actions; and (3) he was treated less favorably than an employee who did not request FMLA leave, or that the adverse action occurred because he requested FMLA. *Hunt v. Rapides Healthcare Sys., LLC,* 277 F.3d 757 (5th Cir. 2001).

Mr. Lawson alleges that he was retaliated against by being terminated, thus he suffered an adverse employment action. Mr. Lawson argues that he was treated less favorably because he took medical leave.

Excel argues that Mr. Lawson's retaliation claim lacks temporal proximity. "The FMLA does not entitle an employee to 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" *Walker v. Energy Transfer Partner, LLC,* 2020 WL 730899, at *5 (W.D. La. Feb. 11, 2020) quoting 29 U.S.C. § 2614(a)(3)(B). In *Prince v. Coco-Cola Bottling Co., United, Inc.,* 2020 WL 1312467, at *7 (W.D. La. Mar.18, 2020), Judge Terry Doughty explained that:

> [t]he Supreme Court has recognized that there must be a "very close temporal proximity between knowledge of a protected activity and an adverse employment action," explaining that even a three-month period between protected activity and adverse action was too attenuated to support a retaliation claim. *Clark County School District v. Breeden,* 552 U.S. 268, 273 (2001). The Fifth Circuit has held that a five-month lapse is not close enough to establish a retaliation claim. *Raggs v. Mississippi Power and Light Co.,* 278 F.3d 463, 472 (5th Cir. 2002).

Excel argues that Mr. Lawson's retaliation claim under the FMLA lacks sufficient temporal proximity because there was a 5-month lapse between the time he left the jobsite for medical reasons (August 21, 2017), and the time he was laid off due to the ROF, (January 25, 2018).

When showing causation, "[t]he plaintiff only needs to show that the protected activity and the adverse employment action were not completely unrelated." See *Hardtke v. The Hartford,* 2006 U.S. Dist. LEXIS 73830, *6 (W.D. Tex. Oct. 10, 2006). When

evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." *Mauder v. Metro. Transit Auth. of Harris County,* 446 F.3d 574, 583 (5th Cir. 2006).

Excel argues that even if the 5-month gap between the protected activity and the termination does not break the causal relationship, Mr. Lawson has failed to show evidence of retaliation. "Retaliation claims for exercising FMLA rights are subject to the *McDonnell Douglas* burden-shifting framework." In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013), citing *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir. 1996).

Even though the Court is not disregarding the 5-month time lapse which does tend to break the causal relationship, more significantly, as discussed hereinabove, the Court concludes that Excel has sufficiently established non-discriminatory reasons for Mr. Lawson's termination, and furthermore, Mr. Lawson has failed to show that those non-discriminatory reasons are pretextual. Mr. Lawson has failed to show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. Accordingly, the Court finds that there is no genuine issue of fact for trial as to Mr. Lawson's retaliation claims.

*FMLA*

Mr. Lawson claims that Excel interfered with his rights under the FMLA because it permitted him to utilize paid time of ("PTO") to attend his necessary physician appointments and Excel did not apprise him of his rights under the FMLA. Excel moves to dismiss Mr. Lawson's claims because Mr. Lawson did not provide Excel of notice of his needs, and he has failed to show that he was prejudiced.

"To prevail on an interference claim, an employee must prove that the violation caused him prejudice." *Villegas v. Albertsons, LLC,* 96 F.Supp.3d 624, 634-35 (W.D. Tex. 2015). "Prejudice is a 'real impairment' of an employee's FMLA rights." *Id.* (holding that plaintiff attended all appointments and was never entitled to earn his normal paycheck under the FMLA, so he was not prejudiced). There is no evidence to show that Mr. Lawson was unable to return to his original position; the evidence shows that his job position remained the same, and there is no evidence that he missed any necessary medical appointments. The Court finds that because there is no evidence that Mr. Lawson was prejudiced, his FMLA claims must fail.

## CONCLUSION

For the reasons set forth above, the Court will grant Excel's Motion for Summary Judgment in its entirety, dismissing with prejudice Mr. Lawson's claims age discrimination pursuant to the ADEA, and his ADA and FMLA claims.

**THUS DONE AND SIGNED** in Chambers on this 28th day of June, 2021.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**